UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

GREGORY ANDRE SMITH,
    Plaintiff,

v.

L. TREXLER, et al.,
    Defendants.

Case No. 13-cv-01052-SBA (PR)

**ORDER PARTIALLY GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND SEVERING MISJOINED DEFENDANTS**

Plaintiff Gregory Andre Smith, a state prisoner currently incarcerated at Salinas Valley State Prison ("SVSP"), brings the instant pro se civil rights action, pursuant to 42 U.S.C. § 1983, alleging various Eighth Amendment claims for deliberate indifference to health and safety, deliberate indifference to serious medical needs, and retaliation, against twenty-two SVSP prison officials. These claims are based on a number of separate events occurring between March 2011 and August 2012.

The parties are presently before the Court on Defendants' motion for summary judgment or dismissal based on misjoinder of party-defendants. Having read and considered the papers submitted in connection with this matter, the Court hereby GRANTS summary judgment as to the claims alleged against Chief Deputy Warden L. Trexler and severs the remaining party-defendants without prejudice, including: Physician Richard Mack; and Correctional Officers G. Bailey, H. Castillo, J. Ceja, J. Collier, R. Diaz, D. Dornan, V. Franco, G. Gudino, A. Machuca, M. Mejai, A. Miramontes, E. Montano, L. Ornealas, B. Powell, R. Reyes, M. Rodriguez, M. Roennman, J. Sanudo, J. Spaulding, and J. Vinson.

## I. BACKGROUND

### A. FACTUAL SUMMARY

On February 21, 2011, Plaintiff was placed in administrative segregation at SVSP for battery on another inmate with a weapon. Am. Compl. ¶ 29, Dkt. 10. On March 3, 2011, Plaintiff appeared at an Institutional Classification Committee ("ICC") hearing chaired by Defendant Trexler. Trexler Decl. ¶ 9, Ex. C. The ICC is responsible for assigning inmates to a housing program when they are placed in administrative segregation. Trexler Decl. ¶ 3. At the hearing, Plaintiff informed the ICC that he suffers from certain mental health problems, including chronic depression and anti-social personality disorders, which prevent him from sharing a cell with another inmate. Am. Compl. ¶¶ 30-32, Dkt. 10. Plaintiff indicated that if he is forced to "double cell," "serious bodily injury or death would result." Id. Defendant Trexler denied Plaintiff's request for a single cell placement, in response to which he filed a grievance against Defendant Trexler. Id.

On May 25, 2011, Plaintiff prepared an affidavit in support of his fellow inmate, Tomas Meneweather, for "wrondoings" he observed when "Defendants C/Os B. Powell and V. Franco" sprayed pepper spray in Meneweather's cell." Id. ¶ 38. In June 2011, Lieutenant G. R. Salazar interviewed Plaintiff regarding that incident. Id. ¶ 41. Shortly after cooperating with Lt. Salazar, Plaintiff and Meneweather allegedly began suffering stomach and chest discomfort, which they believed to be the result of "unknown substances" being placed in their food. Id. ¶ 42. Plaintiff alleges that from July 9, 2011 through September 22, 2011, he was repeatedly served meals that made him ill by Defendants Spaulding, Vinson, Montona, Mejai, Gudino, Reyes, Ceja, Rodriguez, Diaz, Sanudo, Machuca, Castillo, Powell, Franco, Dornan, Miramontes, Bailey and Ornealas. Id. ¶¶ 59-75.

In the meantime, on August 23, 2011, Plaintiff complained to Defendant Mack, a physician, about the contaminated food and related illness. Id. ¶ 48. Defendant Mack ordered blood and urine samples to be taken from Plaintiff "to determine if there was any

1   substance to Plaintiff's claims and to determine if any additional treatment was necessary
2   for [Plaintiff's] stomach pains." Mack Decl. ¶ 6. Defendant Roennman, however,
3   allegedly refused to allow a lab technician to take the blood and urine samples from
4   Plaintiff. Am. Compl. ¶ 49.

5   A week later, on September 8, 2011, the blood and urine tests were performed on
6   Plaintiff. Mack Decl. ¶ 6. On September 9, 2011, Defendant Mack reviewed the test
7   results and determined that they were "within normal limits" and "did not indicate that
8   [Plaintiff] needed any additional medical care." Id. Defendant Mack determined that the
9   test results "indicated that additional tests may be necessary" and thereafter ordered
10  additional tests on October 12, 2011. Id. Again, Defendant Mack concluded that the
11  October 12, 2011 test results were "within normal limits and did not indicate any
12  additional tests were necessary." Id.

13  In October 2011, Defendant Collier approached Plaintiff about his "allegations of
14  being poisoned by his colleagues," and threatened him by saying that "if [Plaintiff] was
15  smart [he] would 'leave that poisoing [sic] shit alone or else [his] stay in [administrative
16  segregation] could get unpleasant.'" Am. Compl. ¶ 48.

17  On January 20, 2012, Plaintiff was treated with antibiotics for "h pylori" bacteria
18  which later was detected in his blood test results. Id. ¶ 54.

19  In April 2012, Defendants Collier and Roennman "informed Plaintiff that life is
20  going to get rough for [him] for continuing to pursue an investigation into being
21  poisoned." Id. ¶ 80. On April 15, 2012, Plaintiff claims that Defendant Collier refused to
22  provide him with his dinner tray. Id. ¶ 81. After Plaintiff filed a complaint to Defendant
23  Collier's superior, Defendants Collier and Roennman allegedly began to "harass,
24  intimidate and threaten[] Plaintiff by kicking on Plaintiff's cell door, taunting Plaintiff,
25  [and] using foul disrespect[ful] language when speaking to Plaintiff." Id. ¶ 83. On April
26  30, 2012 and August 3, 2012, Defendant Collier again denied Plaintiff his dinner tray, in
27  retaliation for filing complaints against Defendant Collier. Id. ¶ 85.
28  On August 6, 2012, Defendant Collier served Plaintiff a dinner tray with "chewing

3

1    tobacco spit in [his] food." Id. ¶ 85. Defendant Collier's alleged retaliatory actions of

2    denying Plaintiff his dinner tray continued to take place in June and July 2013. Id. ¶ 93.

3    Plaintiff claims he has lost between ten to fifteen pounds, due to lack of nutrients which

4    has exacerbated [his] stomach medical conditions . . . ." Id. ¶ 93.

### B.   PROCEDURAL SUMMARY

#### 1. Claims

Plaintiff filed the instant action in this Court on March 7, 2013. Dkt. 1. On August 30, 2013, Plaintiff filed an Amended Complaint against twenty-five Defendants, seeking injunctive relief and monetary damages. Dkt. 10. The Amended Complaint names the twenty-two party-defendants named above and Warden Anthony Hedgpeth, and Correctional Sergeants R. Machuca, Jr. and M. Zornes.

In its Order of Service, the Court dismissed: (1) the supervisory liability claims against Defendants Hedgpeth, R. Machuca and Zornes; (2) the supervisory liability claim against Defendants Hedgpeth and Trexler based on "wrongdoings" of subordinates Defendants Franco and Powell; and (3) the claims of harassment and threats as to Defendant Collier. Dkt. 15 at 9-10. The Court served the remaining twenty-two Defendants as to the following claims:

(1) Defendant Trexler was deliberately indifferent to his health and/or safety when he approved Plaintiff for double-cell housing in March 2011;

(2) Defendants Spaulding, Vinson, Montona, Mejai, Gudino, Reyes, Ceja, Rodriguez, Diaz, Sanudo, A. Machuca, Castillo, Powell, Franco, Dornan, Miramontes, Bailey and Ornealas served him tainted meals from July to September 2011 in retaliation for providing information regarding an incident involving another inmate;

(3) Defendant Mack provided inadequate medical care in August and September 2011 in response to Plaintiff's complaints of food poisoning;

(4) Defendant Roennman interfered Plaintiff's medical care on August 30, 2011; and

(5) Defendant Collier was deliberately indifferent and retaliated against him by

denying him his meals in 2012 and 2013.

### 2. Pending Motion

Defendants' motion presents the following arguments: (1) Plaintiff failed to exhaust available administrative remedies against Defendants Vinson, Collier, Ceja, Rodriguez, Powell, Mejai, Spaulding, Castillo, A. Machuca, Sanudo, Miramontes, Reyes, Montano, Diaz, Bailey, Dornan, Franco, Ornealas and Gudino[1]; (2) Defendant Trexler was not deliberately indifferent to Plaintiff's health or safety; (3) Defendant Mack was not deliberately indifferent to Plaintiff's serious medical needs; (4) Defendants Mack and Trexler are entitled to qualified immunity; and (5) the Defendants are misjoined because Plaintiff's claims against them arise out of distinct, unrelated incidents. Plaintiff has filed an opposition to the motion in response to which Defendants have filed a reply. The motion is now fully briefed and ripe for adjudication. Because the matter of whether Defendants have been properly joined in this action is a threshold question, the Court addresses that issue first.

## II. DISCUSSION

### A. MISJOINDER OF DEFENDANTS

Defendants contend that Plaintiff has improperly joined claims and party-defendants based on "separate incidents involving different defendants." Dkt. 64 at 22. Under Federal Rule of Civil Procedure 20(a)(2), a plaintiff may bring a claim against multiple defendants so long as (1) the claim against them arises out of the same transaction or occurrence, or series of transactions and occurrences, and (2) there are commons questions of law or fact as to all defendants.[2] When there is a misjoinder of parties or

---

[1] Defendants originally argued that Plaintiff also failed to exhaust his claim against Defendant Roennman for interfering with Plaintiff's August 30, 2011 blood test; however, in their reply, Defendants have withdrawn such argument. See Dkt. 77 at 5.

[2] "Even once these requirements are met, a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." Coleman v. Quaker Oats Co., 232 F.3d 1271, 1296 (9th Cir. 2000).

1   claims, "the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21;
2   see Rush v. Sport Chalet, Inc. 779 F.3d 973, 975 (9th Cir. 2015) (noting that a court may
3   sever misjoined parties and dismiss them, provided that it evaluates the potential prejudice
4   to the plaintiff). In other words, the improper joinder problem can be solved by merely
5   dismissing or severing the improperly joined parties. Fed. R. Civ. P. 21.

6   The claims alleged in the Amended Complaint do not satisfy the requirements of
7   Rule 20(a) for permissive joinder. By its terms, the first prong of the test "requires factual
8   similarity in the allegations supporting Plaintiffs' claims." Visendi v. Bank of Am., N.A.,
9   733 F.3d 863, 870 (9th Cir. 2013). That similarity is absent in this case. Plaintiff's first
10  claim is based on Defendant Trexler's decision at a March 2011 administrative hearing
11  where he declined Plaintiff's request for a single cell and instead placed him in a double
12  cell. In contrast, the next claim is based on incidents occurring several months later, from
13  July to September 2011, during which time eighteen different Defendants allegedly served
14  Plaintiff contaminated food in retaliation for his cooperation in a prison investigation
15  regarding the treatment of another inmate (Meneweather). There is no indication that the
16  alleged retaliation was connected to Defendant Trexler's decision to place Plaintiff in a
17  double-cell. As for Plaintiff's remaining claims, they too are predicated on incidents
18  involving different defendants that are unrelated to the claim against Defendant Trexler.

19  Nor do Plaintiff's claims present any "question of law or fact common to all
20  defendants . . . ." Fed. R. Civ. P. 20(a)(2). In his first claim, Plaintiff alleges that
21  Defendant Trexler acted with deliberate indifference to his health and safety by refusing
22  his request for a single cell placement. The other claims arise from separate, subsequent
23  incidents involving the alleged contamination of food in retaliation for Plaintiff's
24  cooperation in an investigation regarding another inmate and inadequate medical care
25  following Plaintiff's consumption of that food. Because those claims involve the
26  application of different legal standards to different parties and factual contexts, the second
27  prong of the test for permissive joinder also is not satisfied. See Coughlin v. Rogers, 130
28  F.3d 1348, 1351 (9th Cir. 1997) (holding that claims "involv[ing] different legal issues,

6

1  standards, and procedures" do not involve common factual or legal questions).

2  In the event the test for permissive joinder is not satisfied, the Court may sever or
3  dismiss the misjoined parties. Visendi, 733 F.3d at 870.  In deciding whether to dismiss,
4  as opposed to sever, the district court must evaluate the prejudice to the plaintiff. Rush v.
5  Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir. 2015) (noting that "[m]any of our fellow
6  circuits have held that district courts who dismiss rather than sever must conduct a
7  prejudice analysis, including 'loss of otherwise timely claims if new suits are blocked by
8  statutes of limitations.'") (citation omitted).  Here, it is not entirely clear whether
9  Plaintiff's claims against the misjoined Defendants (i.e., all Defendants other than
10 Defendant Trexler) would be timely in the event Plaintiff were to refile a separate action
11 against them.  Some of the incidents against the misjoined Defendants took place more
12 than four years ago, which is beyond the limitations period.[3]  Accordingly, the Court finds
13 that severance, as opposed to dismissal, is the appropriate remedy to address the
14 misjoinder of parties.

15 The Court now turns to Plaintiff's remaining claim against Defendant Trexler.

16 **B.   SUMMARY JUDGMENT AS TO DEFENDANT TREXLER**

17 **1.  Legal Standard**

18 "[S]ummary judgment is appropriate where there 'is no genuine issue as to any
19 material fact" and the moving party is "entitled to a judgment as a matter of law.'"
20 Alabama v. North Carolina, 560 U.S. 330, 344 (2010) (quoting Fed. Rule Civ. Proc. 56(c))

---

[3] "For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law." Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004).  As applied to prisoners, the limitation period for bringing an action under California law is four years. See Cal. Civ. Proc. Code §§ 335.1, 352.1(a) (providing a two-year statute of limitations for personal injury claims, which may be tolled for an additional two years for prisoners).  The Ninth Circuit has held that prisoners are entitled to equitable tolling of the statute of limitations while completing the mandatory exhaustion process. Brown v. Valoff, 422 F.3d 926, 942-43 (9th Cir. 2005).  However, the parties dispute whether Plaintiff properly exhausted all of his claims.

(citing cases). "The burden of establishing the nonexistence of a 'genuine issue' is on the party moving for summary judgment." Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The movant must inform the district court "of the basis for its motion, . . . identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id.

Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of a genuine issue of material fact. Id. at 324. "This burden is not a light one. The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corp. Secs. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). An issue is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 322-23 (1986). All reasonable inferences are to be drawn in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**2. Analysis**

The gist of Plaintiff's first claim for relief, liberally construed, is that Defendant Trexler was deliberately indifferent to his mental condition and safety by declining his request for a single cell placement. Am. Compl. ¶¶ 30-36, 96. The Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials take reasonable measures for the health and safety of inmates. Farmer v. Brennan, 511 U.S. 825, 832 (1994). Establishing a violation of the Eighth Amendment requires a two-part showing. First, the plaintiff "must objectively show that he was deprived of something 'sufficiently serious.'" Foster v. Runnels, 554 F.3d 807, 812 (9th Cir. 2009) (quoting Farmer, 511 U.S. at 834).

Second, the plaintiff "must then make a subjective showing that the deprivation occurred with deliberate indifference to the inmate's health or safety." Id. As will be

1   discussed below, Plaintiff's deliberate indifference claim fails, as a matter of law, with
2   respect to both the objective and subjective prongs of the aforementioned test.

### a) Sufficiently Serious Deprivation

Under the objective prong of the test for establishing an Eighth Amendment deliberate indifference claim, an inmate must show "extreme deprivations" of the "minimal civilized measures of life's necessities." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The court looks to whether "society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose anyone unwillingly to such a risk." Helling v. McKinney, 509 U.S. 25, 36 (1993); see also Estelle v. Gamble, 429 U.S. 97, 102 (1976). Here, Plaintiff has presented no evidence to establish that, because he suffers from certain mental health illnesses, he necessarily should have been assigned single cell status. Plaintiff's subjective fears regarding sharing a cell do not rise to the level of demonstrating that a single cell assignment was mandated for mental health or safety reasons. See Toguchi, 391 F.3d at 1058; Jackson, 90 F.3d at 332. The Court therefore finds that Plaintiff has failed to demonstrate a genuine issue of fact as to whether he suffered a sufficiently serious deprivation within the meaning of the Eighth Amendment.

### b) Deliberate Indifference

Even if Plaintiff had shown a sufficiently serious deprivation, he has failed to demonstrate a genuine issue of material fact as to the subjective component of a deliberate indifference claim.

"To establish a prison official's deliberate indifference, an inmate must show that the official was aware of a risk to the inmate's health or safety and that the official deliberately disregarded the risk." Foster, 554 F.3d at 814. In other words, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Farmer, 511 U.S. at 837. Deliberate indifference is a higher standard than negligence or lack of ordinary due care for the prisoner's safety. Id. at 835.

1   The record does not support a finding of deliberate indifference on the part of
2   Defendant Trexler. As an initial matter, the record demonstrates that Defendant Trexler
3   evaluated Plaintiff's request in accordance with California regulations. Those regulations
4   specify that, as a general rule, all inmates are required to share a cell, and that "[i]nmates
5   are not entitled to single cell assignment, housing location of choice, or to a cellmate of
6   their choice." Cal. Code Regs. tit. 15, § 3269(d). Single cell status may be appropriate for
7   inmates who demonstrate a history of in-cell abuse, significant in-cell violence towards a
8   cell partner, verification of predatory behavior towards a cell partner, or who have been
9   victimized in-cell by another inmate. Id. In addition, single cell status may be approved if
10  recommended by clinical staff due to mental health or medical concerns. Id. § 3269(f).

11  SVSP is "designed for the majority of inmates to be double-celled." Trexler Decl.
12  ¶ 8. SVSP Operational Procedure 42 provides a list of circumstances to consider before
13  assigning an inmate to single-cell status, and requires the ICC to determine whether an
14  inmate "has a history of in-cell assaultive, abusive, or predatory behavior" before granting
15  an inmate single-cell status." Id. ¶ 5. In order to determine if an inmate should be
16  assigned single-cell status, the ICC is to consider documented reports of prior in-cell
17  incidents and staff is instructed to consider the inmate's pattern of behavior, not just an
18  isolated incident. Id. Operational Procedure 42 does not allow an inmate to be placed on
19  single-cell status simply because he has made unsubstantiated claims of mental illness or
20  threats against potential future cellmates."

21  Here, the record shows that Plaintiff was "cleared for double-cell housing because
22  he did not have a history of in-cell violence or sexual predatory behavior towards
23  cellmates." Trexler Decl. ¶ 9. Although Plaintiff stated he would "kill any cellmate he
24  gets," id., Ex. C, inmate threats are not sufficient under prison policy to assign an inmate to
25  single cell status, id. ¶ 9. In addition, there is no evidence to substantiate the credibility of
26  Plaintiff's claim that he would apply deadly force upon a cellmate. The record shows that
27  Defendant Trexler (as well as other committee members) considered appropriate factors
28  when assigning Plaintiff to double-cell housing. There is no evidence that Defendant

10

Trexler was aware of any risk to Plaintiff's health or safety by placing him in a double cell or that he deliberately disregarded the risk.

### c) Injury

Plaintiff's deliberate indifference claim also fails for lack of injury. Under the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(a). Plaintiff must plead an actual physical injury within the meaning of the Prison Litigation Reform Act of 1995 in order to recover damages for mental or emotional damages.

Here, Plaintiff has failed to show that he suffered any injury as a result of being double-celled. Plaintiff's fear of double-celling is insufficient to satisfy the Eighth Amendment deliberate indifference standard. Babcock v. White, 102 F.3d 267, 270 (7th Cir. 1996). In Babcock, the Seventh Circuit assessed whether an inmate "who was not assaulted by, and who is no longer at risk from, fellow inmates may nevertheless maintain a Bivens claim for money damages based solely on prison officials' past failure to take measure to protect the prisoner." Id. The Court concluded that "it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." Id. at 272. In this case, Plaintiff has only shown a fear of injury to himself or a cellmate—not a reasonably preventable injury that he has, in fact, suffered. Plaintiff has not claimed any other specific injuries after he was placed in a double cell. His conclusory statements and fears of being assigned to double cell status fail to show that he suffered a cognizable injury as a result of Defendant Trexler's double cell assignment.[4]

---

[4] The Court's finding that Defendants are entitled to summary judgment as to Plaintiff's deliberate indifference claim against Defendant Trexler obviates the need to address Defendant Trexler's alternative argument that he is entitled to qualified immunity.

11

### III. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED THAT

1. Defendants' motion to dismiss based on the misjoinder of Defendants is GRANTED. The Court SEVERS all Defendants other than Defendant Trexler from this action. The Clerk of the Court shall open a new action, and file a copy of the Amended Complaint (dkt. 10) and copies of the Court's service order in this action (dkt. 15) as well as this Order in the new action.

2. Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim against Defendant Trexler. The motion is DENIED in all other respects without prejudice to reasserting the remaining arguments presented therein in a motion filed in the newly-opened action.

3. The Clerk shall close the instant file, terminate all pending matters, and enter judgment in favor of Defendant Trexler.

4. This Order terminates Docket No. 64.

IT IS SO ORDERED.

Dated: 3/10/16

_____
SAUNDRA BROWN ARMSTRONG
Senior United States District Judge

P:\PRO-SE\SBA\CR.13\Smith1052.grantIP&denyIP-MSJ_022916.docx